In re Lawrence G. WILLIAMS, Debtor.

Lawrence G. WILLIAMS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 97–590L.

United States District Court,
D. Rhode Island.

Dec. 7, 1998.

John Paul Boyajian, Andrew S. Richardson, Boyajian, Harrington & Richardson, Providence, RI, Gerard Riso, Dennis Stein, Mark I. Chinitz, Stein, Riso, Haspel & Jacobs, New York City, for appellant.

Michael P. Iannotti, Assistant U.S. Attorney, Providence, RI, Charles J. Cannon, Peter Sklarew, U.S. Dept. of Justice, Tax Division, Washington, DC, for appellee.

Matthew J. McGowan, Salter, McGowan, Swartz & Sylvia, Providence, RI, for trustee.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on the appeal of appellant-debtor ("Williams") from a Decision and Order of the United States Bankruptcy Court for the District of Rhode Island. The Decision below established the effective date of the Bankruptcy Court's denial of debtor's requested discharge. That Decision also had the effect of lifting the automatic stay that attaches upon the filing of a bankruptcy petition. As a result of that Decision, tax debt claims of appellee ("United States") against Williams are not barred by the statute of limitations. For the reasons

stated below, the Decision and Order of the Bankruptcy Court is affirmed.

## BACKGROUND

This Court need not dwell on the complicated facts of this much-litigated bankruptcy. A short recitation of only the facts and travel of this case necessary for decision of this appeal is sufficient. On December 3, 1990, Williams filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Rhode Island. Citibank, a creditor with a claim of several million dollars, filed an objection on March 7, 1991 with the Bankruptcy Court arguing that no discharge should be issued in debtor's favor, relying on the discharge denial provisions of Chapter 7. *See* 11 U.S.C. § 727(a) (providing that a discharge may be denied if the debtor has, inter alia, transferred assets with an intent to defraud creditors). Citibank also sought to have its claims against Williams declared nondischargeable. *See* 11 U.S.C. 523(a)(2)(B) (excepting from discharge credit obtained by use of a materially false writing made with the intent to deceive). Williams voluntarily converted his bankruptcy petition to a Chapter 11 proceeding on April 5, 1991.[1]

 In an opinion dated October 8, 1993, Bankruptcy Judge Votolato recounted the complicated history of debtor's relationship with Citibank and disposed of the various claims asserted by Williams and Citibank. The Court there determined that Citibank's objection to Williams' discharge was valid. *See Citibank, N.A. v. Williams,* 159 B.R. 648, 662 (Bankr.D.R.I.1993). The Court applied the facts of Williams' financial situation to the four part test outlined in § 727(a)(2)(A) and concluded that each had been satisfied.[2] *See Citibank,* 159 B.R. at 661–62. The Court concluded its analysis by stating: "Citibank's

claim under 11 U.S.C. § 727(a)(2)(A) that Williams be denied a discharge is GRANTED." *Citibank,* 159 B.R. at 662. The denial of discharge was not entered on the docket of the bankruptcy case. Furthermore, creditors were not afforded the notice of discharge denial required by Bankruptcy Rule 4006 until several years later. *See* Fed. R.Bankr.P. 4006 (requiring that the Bankruptcy Court clerk provide notice of discharge denial to creditors in the manner provided by Rule 2002). The discharge denial decision of the Bankruptcy Court took place within the Chapter 11 context, but before Williams filed a reorganization plan, even though he had been a Chapter 11 petitioner for thirty-four months when that decision was entered.

On April 14, 1995, the Bankruptcy Court granted the United States Trustee's motion to reconvert the Williams bankruptcy into a Chapter 7 case. Concerned about a multi-million dollar tax debt it alleged Williams owed the federal government, the United States filed a motion with the Bankruptcy Court on July 7, 1995 seeking an "expedited entry summarily denying the discharge (due to collateral estoppel) or, unless such an order were promptly granted, then to lift the automatic stay." Williams responded to the government's motion by arguing that the stay was lifted automatically when the Bankruptcy Court denied the discharge under § 727 in the *Citibank* decision.

 The exact effective date of the denial of discharge was important to both parties because a final order denying a discharge has the effect of lifting the automatic stay imposed by § 362 of the Bankruptcy Code. *See* 11 U.S.C. § 362(a) (imposing a stay upon the filing of a bankruptcy petition of all creditor actions against the debtor); *id.*

---

1. On that same date, Williams filed an adversary proceeding in the Bankruptcy Court against Citibank, seeking to have set aside an alleged preferential transfer. Citibank counterclaimed and sought to have set aside an alleged fraudulent transfer from Williams to his wife. The Bankruptcy Court consolidated these two claims with the initial Citibank objection filed on March 7, 1991. All of these issues were decided by the Bankruptcy Court in its decision in *Citibank, N.A. v. Williams,* 159 B.R. 648 (Bankr.D.R.I.1993).

2. Denial of a discharge is appropriate under § 727(a)(2)(A) when the following four part test is satisfied: (1) a transfer of property has occurred; (2) the transfer involved property of the debtor; (3) the transfer was within one year of the filing of the petition; and (4) the debtor had, at the time of the transfer, the intent to hinder, delay, or defraud a creditor. *See* 11 U.S.C. § 727(a)(2)(A); *Citibank, N.A. v. Williams,* 159 B.R. 648, 661 (Bankr.D.R.I.1993); *In re Beausoleil,* 142 B.R. 31, 36 (Bankr.D.R.I.1992).

§ 362(c)(2)(C) (lifting the automatic stay at "the time a discharge is granted or denied"). The lifting of the stay, in turn, has the consequence of starting the clock on the one year statute of limitations period for the federal government's tax claim. According to the theory proffered by Williams, the government was already too late on its tax claim and, thus, it was barred. If the *Citibank* decision neutralized the automatic stay on October 8, 1993, the government's opportunity to pursue Williams' tax liability evaporated on October 8, 1994. The United States argued, however, that the *Citibank* decision was not a final judgment on the issue of discharge denial, and therefore, it could not have activated the statute of limitations timer.

The Bankruptcy Court ruled on this dispute on October 20, 1995. *See* "Decision and Order Establishing Time of Denial of Discharge and Lifting Automatic Stay" (Bankr. D.R.I. Oct. 20, 1995) ("Discharge Denial Order"). That opinion is the subject of this appeal. The Bankruptcy Judge concluded that the denial of Williams' discharge while he was a Chapter 11 debtor could be decided only by application of 11 U.S.C. § 1141(d)(3), which specifically provides a mechanism for denial of a Chapter 11 debtor's discharge. *See* Discharge Denial Order at 3. The Court conceded that it had overlooked § 1141(d)(3) when it initially decided the discharge issue in its *Citibank* decision. *See* Discharge Denial Order at 6–7 ("[E]veryone is just now waking up to the § 1141 issue, including the Court....").

The Bankruptcy Court determined that a court could not deny a discharge for a Chapter 11 debtor by relying only on § 727, because § 1141(d)(3) is the exclusive mechanism for the denial of discharge of a Chapter 11 debtor. One of the three requirements for denial under § 1141(d)(3), explained the Court below, is that the debtor's plan provide for "the liquidation of all or substantially all of the property of the estate." 11 U.S.C. § 1141(d)(3)(A). The Bankruptcy Court reasoned that because Williams had never submitted a plan, the first prong of § 1141(d)(3) was not satisfied, and therefore, no denial

could be entered. *See* Discharge Denial Order at 3–4.

The Court further explained that the *Citibank* decision did not constitute a final denial of discharge, but was merely "advisory or declaratory" of the § 727 component of the test provided by § 1141(d)(3) and "could not become final until something else happened, i.e., either all three § 1141 elements are present, or the case is converted to Chapter 7." Discharge Denial Order at 3–4. The Court continued by declaring that the discharge denial was final, and the automatic stay lifted, as of April 14, 1995, the date upon which the debtor's case was reconverted into a Chapter 7 case. *See* Discharge Denial Order at 8. Unlike a denial for a Chapter 11 debtor, a discharge denial for a Chapter 7 debtor can be entered pursuant to § 727 alone. *See* 11 U.S.C. § 727(a)(2). Therefore, explained the Bankruptcy Court, the discharge denial was effective the moment that the case was converted into a Chapter 7 proceeding since the Bankruptcy Court had already decided the § 727 issue in its *Citibank* opinion. *See* Discharge Denial Order at 8. Williams appeals these conclusions, arguing that the *Citibank* decision was an effective denial of discharge. The United States urges this Court to uphold the Bankruptcy Court's determination of the date upon which the automatic stay was lifted. The United States also argues that this appeal should be dismissed summarily for appellant's failure to prosecute.

## DISCUSSION

### I. Jurisdiction and Standard of Review

This Court has jurisdiction to hear appeals from judgments, orders, and decrees of the Bankruptcy Court. *See* 28 U.S.C. § 158(a). On appeal from a decision of the Bankruptcy Court, this Court sits as an intermediate appellate court. Such appeals are "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." *Id.* § 158(c)(2); *see also In re Mayhew,* 223 B.R. 849, 854 (D.R.I.1998). Accordingly, the standard of review is a bifurcated one. While the Bankruptcy Court's findings of fact are reviewed for clear error, *see* Fed.R.Bankr.P.

8013, its conclusions of law are afforded plenary review, *see In re LaRoche,* 969 F.2d 1299, 1301 (1st Cir.1992); *In re Williams,* 190 B.R. 728, 732 (D.R.I.1996). Furthermore, this Court is not bound to remain within the confines of the Bankruptcy Court's reasoning for its decision, but is free to affirm the decision below on any ground supported by the record. *See In re Erin Food Servs., Inc.,* 980 F.2d 792, 801 (1st Cir.1992); *In re Hemingway Transp., Inc.,* 954 F.2d 1, 9 (1st Cir.1992).

## II. Analysis

### A. Effective Date of the Discharge Denial

■ The climactic event in a Chapter 11 bankruptcy proceeding is the confirmation of a plan for the reorganization of the debtor's financial dilemma. It is this official judicial approval of the debtor's plan that triggers an important incentive under Chapter 11, namely, discharge of the debtor's pre-confirmation debts. This discharge is automatic upon confirmation of the reorganization plan and applies to all pre-confirmation debts that have not been excepted from discharge. *See* 11 U.S.C. § 1141(c)–(d) (discharging, respectively, the debtor's property and the debtor personally); *id.* § 523 (excepting certain classes of debt from discharge). The Bankruptcy Code provides for this discharge in § 1141(d)(1)(A):

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation. . . .

*Id.* § 1141(d)(1)(A).

There are, however, two exceptions contained in § 1141(d) to this general discharge. Under the first, not at issue in this case, the debtor remains responsible for debts deemed nondischargeable by the court under § 523. *See id.* § 1141(d)(2). A discharge may also be denied by the court under § 1141(d)(3). It is this exception which is at the heart of this dispute. The exception provides:

■ The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

*Id.* § 1141(d)(3). The three subparts of this provision are written in the conjunctive. Therefore, denial of discharge under § 1141(d)(3) is proper only when the court is satisfied that all three subparts have been proven. *See In re T–H New Orleans Ltd. Partnership,* 116 F.3d 790, 804 (5th Cir.1997) ("[T]his section requires that all three requirements be present in order to deny the debtor a discharge. . . ."); *In re Rath Packing Co.,* 55 B.R. 528, 537 (Bankr.N.D.Iowa 1985). Denial is foreclosed and the debts are discharged upon confirmation of a plan if any one of the subparts is not established by the objector to the discharge. *See In re Jason Pharmaceuticals, Inc.,* 224 B.R. 315, 318 n. 2 (Bankr.D.Md.1998); *In re River Capital Corp.,* 155 B.R. 382, 387 (Bankr.E.D.Va. 1991).

Although a Chapter 7 debtor may be denied a discharge under the provisions of § 727(a) alone, that section of the Bankruptcy Code is applicable to a Chapter 11 debtor only as one of three components of the discharge denial provision of § 1141(d)(3). The Court below reached that very conclusion in its Discharge Denial Order. However, in arguing a contrary position, appellant asserts that the Bankruptcy Court was in error. Appellant argues that the Bankruptcy Court ignored a relevant decision of a sister bankruptcy court and relied on a prior decision of its own that is characterized by appellant as groundless. Appellant's position is totally without merit.

■ Appellant has misread the authorities upon which he bases his attack. The conclusion reached by the Bankruptcy Court in its Decision here and in its prior decision (attacked as groundless by appellant), *In re Giguere,* 165 B.R. 531 (Bankr.D.R.I.1994), is amply supported by relevant authority. Sec-

tion 727(a) is applicable to a Chapter 11 debtor only as one component of § 1141(d)(3) and cannot stand on its own as a basis for denying a Chapter 11 debtor's discharge. *See In re Sullivan,* 153 B.R. 746, 750 (Bankr. N.D.Tex.1993) (" § 727(a) [is] unavailable against Chapter 11 debtors except through the provisions of § 1141(d)(3)."); *In re Rich–Morrow Realty Co.,* 100 B.R. 893, 895 (Bankr.N.D.Ohio 1989) ("[S]tanding alone, Section 727 is inapplicable to [debtor's] Chapter 11 case."); *In re Tveten,* 97 B.R. 541, 542 (Bankr.D.Minn.1989) (holding that although the Chapter 11 debtor would be denied a discharge under § 727(a) if the case were under Chapter 7, no discharge denial could be entered where the other two elements of § 1141(d)(3) were not established); *In re Miller,* 80 B.R. 270, 271 (Bankr. W.D.N.Y.1987) (holding that the court could not deny a discharge for a Chapter 11 debtor by applying § 727(a) alone).

This interpretation of the application of § 727(a) in Chapter 11 cases is supported by the treatise cited, but seriously misread, by appellant: "If the chapter 11 plan provides for the liquidation of all or substantially all of the property of the estate and the debtor does not continue in business after consummation of the plan, an individual, partnership or corporation debtor is subject to the limitations of section 727(a)." 8 *Collier on Bankruptcy* § 1141.05[3], at 1141–19 (Lawrence P. King ed., 15th ed. rev.1998). The source continues by noting that "section 727 is applicable only when substantially all of the debtor's property is to be liquidated pursuant to the plan." *Id.* at 1141–20; *see also* 4 Daniel R. Cowans, *Cowans Bankruptcy Law and Practice* § 20.34, at 176 (6th ed.1994) (stating that the three elements of § 1141(d)(3) constitute the "one set of facts that will lose a discharge for a Chapter 11 debtor").

Furthermore, the Bankruptcy Code itself restricts the application of § 727(a) in Chapter 11 cases. Section 103(b) of the Code provides that "[s]ubchapters I and II of chapter 7 of this title apply only in a case under such chapter." 11 U.S.C. § 103(b); *see also* 4 Cowans, *supra,* § 20.34, at 173 (explaining that § 727 does not apply in Chapter 11 cases). Because § 727 is con-

tained within subchapter II of chapter 7 of title 11, Section 103(b) limits the use of § 727(a) to Chapter 7 cases, unless a specific section of chapter 11 provides otherwise.

Williams bases his contrary view of the applicability of § 727 in Chapter 11 cases almost entirely upon the decision of the bankruptcy court in *In re Selig,* 135 B.R. 241, 243 (Bankr.E.D.Pa.1992). To the extent that *Selig* held that a Chapter 11 debtor may be denied a discharge without a finding that all three elements of § 1141(d)(3) are present, it should not be followed. The Bankruptcy Court in *Selig* cited no judicial authority for that particular conclusion. In fact, the sole authority cited in *Selig,* a treatise, was misconstrued by that court. *See In re Selig,* 135 B.R. at 243 (citing *Collier on Bankruptcy* ). The analysis of that source has been discussed above and is consistent with the decision of this Court. In short, the decision in *Selig* is just plain wrong.

■ It is undisputed that no plan was submitted to the Bankruptcy Court in appellant's case. This fact alone is a sufficient basis for rejecting the argument that a denial of discharge could have been entered by the Bankruptcy Court in its *Citibank* decision. The requirements of § 1141(d)(3) for denial were not met because of the failure to produce a plan outlining the scheme for administration of Williams' assets and debts. Denial of discharge based solely on § 727(a) is ineffective when the debtor has filed under Chapter 11 of the Bankruptcy Code.

Appellant argues that despite the clear import of the Bankruptcy Code, the decision by the Bankruptcy Court in *Citibank* had the effect of an immediate denial of discharge because the Court used unequivocal language in its holding. This cannot be so. The Bankruptcy Court's turn of a phrase cannot operate to overrule the command of a federal statute. The Court below did not address two of the three requirements for denial of discharge for a Chapter 11 debtor in its *Citibank* decision. The Court focused only on § 727(a) and declared that under that provision a discharge must be denied. While declaratory of the § 727(a) issue, that decision did not finally decide the discharge issue because no plan had even been submitted at

that time. Indeed, the Bankruptcy Rules provide for the issuance of declaratory judgments relating to the denial of discharges. *See* Fed.R.Bankr.P. 7001(9). In that context, the Bankruptcy Court's decision was interlocutory and merely declaratory of the § 727(a) question.[3] *See In re Tveten,* 97 B.R. at 542 ("Since the debtor had not filed a plan, it was impossible to determine at that point whether or not the debtor should actually be denied a discharge."); *In re Miller,* 80 B.R. at 271 (holding that denial of discharge was premature where no plan had been proposed); *cf. In re Sullivan,* 153 B.R. at 756 (describing the application of § 727(a) in the context of a Chapter 11 debtor as a "hypothetical" determination). The automatic stay was not lifted by the Bankruptcy Court's *Citibank* decision because it was not a final determination denying discharge and only such a final decision can terminate the stay. *See* 11 U.S.C. § 362(c)(2).

The Court below determined that the discharge denial became effective on April 14, 1995. This is the date upon which appellant's bankruptcy case was reconverted into a Chapter 7 proceeding. That conclusion is logical. A Chapter 7 debtor's discharge may be denied by the court under § 727(a) standing alone. The plan of reorganization is inapplicable to Chapter 7 proceedings. In *Citibank,* the Bankruptcy Court declared that the requirements of § 727(a) for denial of discharge had been established. Denial under that provision was effective when the case was converted into one in which § 727(a) was the sole determinant factor for denial. Upon conversion to Chapter 7, no issues in the discharge denial proceeding remained since the sole factor for denial of a Chapter 7 debtor, analysis under § 727(a), had already been decided by the Bankruptcy Court in *Citibank. See Citibank,* 159 B.R. at 661–62 (declaring that the elements of fraudulent transfer under § 727(a)(2)(A) had been established). The denial of Williams' discharge, therefore, was given final effect on

April 14, 1995, and the automatic stay was officially lifted then.

### B. Failure to Prosecute

The United States argues that Williams' appeal should be dismissed for failure to prosecute. Although the Bankruptcy Court issued the Decision and Order that is the subject of this appeal on October 20, 1995, Williams' appeal was not transmitted to this Court until October 17, 1997. The United States argues that it was Williams' duty to ensure that his appeal was properly transferred to the Court in a timely fashion. The United States does not cite to any rule or judicial authority in direct support of its contention, but argues that "two years is too long."

■ The Federal Rules of Bankruptcy Procedure outline the process for appealing a decision of a bankruptcy court. A party has a right to appeal any final judgment, order, or decree of a bankruptcy court to a district court by filing timely notice. *See* Fed. R.Bankr.P. 8001(a); *see also* 28 U.S.C. § 158(a)(1). The Rules provide for a ten day filing period following the entry of the judgment or order appealed from. *See* Fed. R.Bankr.P. 8002.

■ The appeal is entered upon the docket of the district court when the clerk thereof receives the record from the bankruptcy court. *See* Fed.R.Bankr.P. 8007(b). It is the duty of the bankruptcy court clerk to transmit the record to the district court. *See id.* The appellant has a duty to "serve and file a brief within 15 days after entry of the appeal on the docket pursuant to Rule 8007." Fed.R.Bankr.P. 8009(a)(1). The United States does not dispute that Williams complied with the two affirmative duties imposed upon him specifically by the Rules, the timely filing of a notice of appeal and the timely serving of a brief. The United States would charge Williams with the two year delay of the Bankruptcy Court clerk in transmitting the appeal to this Court. Further,

---

**3.** Appellant attaches much significance to the Bankruptcy Court's use of the adjective "advisory" in describing its earlier decision in *Citibank. See* Discharge Denial Order at 8. However, it is clear that the Court's decision of the § 727(a) issue was more than advisory; it was finally declarative of that issue for purposes of the third element in § 1141(d)(3) analysis. Furthermore, the Court below described its order alternatively as "advisory or declaratory ." *See* Discharge Denial Order at 3–4.

the United States seeks to impose the harshest of penalties for this lapse, dismissal.

The Bankruptcy Rules provide district courts with the power to remedy failures by appellants to faithfully discharge their procedural duties as litigants. Rule 8001(a) provides that in an appeal taken as of right: "An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal." Fed.R.Bankr.P. 8001(a). The discretion allowed district courts to sanction appellants under this rule is broad. *See In re Bulic*, 997 F.2d 299, 302 (7th Cir.1993).

However, the ultimate sanction for a party's misconduct, dismissal of the appeal, is a harsh penalty and should be imposed rarely and with great care. *See John's Insulation, Inc. v. L. Addison & Assocs., Inc.*, 156 F.3d 101, 109 (1st Cir.1998). Dismissal under Rule 8001(a) is appropriate when a failure by appellant to fulfill a procedural duty is "coupled with a finding of either prejudice to the appellee or bad faith on the part of the appellant." *In re SB Properties, Inc.*, 185 B.R. 198, 202 (E.D.Pa.1995); *see also In re Comer*, 716 F.2d 168, 177 (3d Cir.1983) ("Not every failure to follow procedural rules mandates dismissal of the appeal."); *In re Cumberland Inv. Corp.*, 133 B.R. 275, 282 (D.R.I.1991) ("Dismissal of an appeal is warranted in instances involving bad faith, negligence or indifference."); *cf. United States Inv. & Dev. Corp. v. Cruz*, 780 F.2d 166, 168 (1st Cir.1986) (stating the general rule that dismissal is a proper sanction for failure to prosecute "when necessary to prevent unfair prejudice").

The United States has failed to demonstrate any prejudice to its tax claims from Williams' alleged failure to prosecute. Furthermore, there is no evidence upon which this Court could conclude that Williams acted in bad faith in prosecuting this appeal. The United States has failed also to provide this Court with any basis for imposing upon the appellant an affirmative duty to supervise the Bankruptcy Court clerk. This Court does not wish to "remove the burden of vigilance from the advocates hired to pursue a client's interests" and cautions litigants that they "may not simply sit back and rely on the court to keep him or her up to date." *In re Mayhew*, 223 B.R. 849, 856 (D.R.I.1998). However, especially in the total absence of proof of prejudice to the United States, dismissal of this appeal would be too harsh a sanction for the ill-defined duty that the United States would impose upon Williams. This Court declines to dismiss Williams' appeal for failure to prosecute. In any event, the United States has won this battle with reason. A shotgun blast is unnecessary.

*CONCLUSION*

The Decision and Order of the Bankruptcy Court, dated October 20, 1995, hereby is affirmed. The Bankruptcy Court's denial of discharge under 11 U.S.C. § 727(a)(2) was effective as of April 14, 1995 and the stay imposed by 11 U.S.C. § 362(a) was terminated on that date.

It is so ordered.