NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No.   NV-13-1263-JuKiTa |
| | ) |
| KENNETH HUFF and ROSEMARIE HUFF, | ) Bk. No.   11-53159-BTB |
| | ) |
| | ) Adv. No.   12-05001-BTB |
| Debtors. | ) |
| _____ | ) |
| | ) |
| A & H INSURANCE, INC., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) M E M O R A N D U M* |
| | ) |
| KENNETH HUFF; ROSEMARIE HUFF, | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on January 24, 2014
at Las Vegas, Nevada

Filed - March 10, 2014

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

_____

Appearances:     Jeffrey L. Hartmann, Esq., of Hartman & Hartman,
                 argued for appellant A & H Insurance, Inc.;
                 Kevin Darby, Esq., of The Darby Law Practice,
                 argued for appellees, Kenneth and Rosemarie Huff.

_____

Before:  JURY, KIRSCHER, and TAYLOR, Bankruptcy Judges.

     * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Judgment creditor A & H Insurance, Inc. (Appellant) filed an adversary proceeding against chapter 11[1] debtors, Kenneth and Rosemarie Huff (collectively, Debtors), seeking denial of their discharge under § 727(a)(2)(A). On cross-motions for summary judgment, the bankruptcy court granted Debtors' motion, denied Appellant's, and entered an order consistent with its ruling. From this order, Appellant filed a timely appeal.

Because we conclude that Appellant's § 727 claim against Debtors was barred as a matter of law, we agree with the result — albeit on other grounds — but VACATE the order based on the bankruptcy court's erroneous application of the law and REMAND with instructions to dismiss the adversary complaint.

## I. FACTS

### A. Prepetition Facts

Appellant filed a lawsuit against Mrs. Huff[2] in the Second Judicial District Court in Washoe County, Nevada, alleging that she breached an employment agreement.

On April 15, 2010, Mr. Huff received $75,047.30 from an investment that he had made prior to his marriage to Mrs. Huff and four days later he deposited it into Debtors' checking account. In March 2011, Mr. Huff withdrew $40,000 from Debtors' checking account and on the same day deposited the funds into a joint account he had with his son (Joint Account). On July 22,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Appellant also named Mt. Rose Insurance, LLC as a defendant, but did not name Mr. Huff.

2011, Mr. Huff withdrew the $40,000 from the Joint Account and on the same day deposited the funds into Debtors' checking account. Debtors then purchased an annuity titled in the names of Mr. and Mrs. Huff with the funds.

After these transfers, on August 9, 2011, following a jury trial, the state court entered a Corrected Final Judgment on Jury Award (Judgment) in Appellant's favor and against Mrs. Huff in the amount of $303,772.05.[3]

**B.    Postpetition Facts**

On October 7, 2011, Debtors filed a joint chapter 11 petition. In Schedule B, they listed the annuity in the amount of $40,000 and in Schedule C they claimed the annuity exempt.

On January 9, 2012, Appellant filed an adversary proceeding against Debtors seeking denial of their discharge under § 727(a)(2)(A) based on the transfer of the $40,000 from Debtors' Checking Account into the Joint Account.

On February 6, 2012, Debtors answered the complaint, asserting general denials and pleading no affirmative defenses.

On March 8, 2012, Debtors filed their disclosure statement and plan. In their disclosure statement, Debtors described the adversary proceeding filed by Appellant and stated that although they believed they would prevail, if they did not, there would be no discharge entered. Debtors' plan was a reorganization plan with Debtors contributing their disposable income to fund the plan. Debtors classified Appellant as an unsecured creditor

---

[3] This amount included $182,821.55 in compensatory damages, $10,677.80 in prejudgment interest through June 9, 2011, and $109,294.40 in attorneys fees and costs.

-3-

in the plan.  Finally, Debtors' plan stated that they would receive their discharge under § 1141(d)(5).

On March 15, 2012, Debtors filed a motion for summary judgment in the adversary proceeding.  After Appellant opposed Debtors' MSJ on the grounds that it was premature and that additional discovery was needed, the parties stipulated to continue the hearing so that they could conduct discovery and take depositions.  By stipulation, the hearing was continued many times, and finally to December 20, 2012, so that Appellant could file its cross MSJ.

Meanwhile, on September 19, 2012, the bankruptcy court approved Debtors' disclosure statement.  On October 5, 2012, Appellant objected to confirmation of Debtors' plan on several grounds.  In its objection, Appellant stated: "The Debtors acknowledge that if the adversary proceeding is successful by A and H as plaintiff, there will be no discharge."

On November 20, 2012, Appellant filed its cross MSJ in the adversary proceeding asserting the following undisputed facts: Debtors had a minor son named Ryan; Mr. Huff and Ryan had the Joint Account at Umpqua Bank; Mr. Huff always maintained possession, dominion and control of the Joint Account; Ryan did not have access to the account and did not withdraw funds from the Joint Account; on March 24, 2011, Mr. Huff transferred $40,000 to the Joint Account; on July 22, 2011, Mr. Huff transferred the $40,000 from the Joint Account back to Debtors' Checking Account; and on August 9, 2011, Appellant obtained its Judgment against Mrs. Huff.

Based on these undisputed facts, Debtors maintained that

-4-

they were entitled to judgment as a matter of law. First, they asserted there was no "transfer" of property within the meaning of §§ 101(54)(D) and 727(a)(2)(A) because Mr. Huff never relinquished or parted with the funds, having had possession and control over the Joint Account at all times. Second, Debtors argued that even if there was a transfer, they were entitled to the protection of the disclose-and-recover exception defense set forth in First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339 (9th Cir. 1986) because Mr. Huff returned the funds to Debtors' Checking Account before they filed their petition. See In re Adeeb, 787 F.2d at 1334 ("transferred" under § 727(a)(2)(A) means "transferred and remained transferred.").

In November 2012, Appellant filed its cross MSJ, a statement of undisputed facts in support, and the declaration of Stephanie Ittner.[4] Appellant argued that a "transfer" occurred under the holding in Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279 (9th Cir. 1996) when Mr. Huff withdrew the $40,000 from Debtors' Checking Account and deposited it into the Joint Account. Appellant also asserted that when the funds were transferred to the Joint Account, Debtors relinquished control and parted ways with the $40,000. According to Appellant, Mr. Huff was on the Joint Account with his son Ryan because the bank's policy mandated that a minor could not be the only signor on the account. Appellant also pointed out that Mr. Huff testified on May 10, 2012, in a deposition that the funds in

---

[4] Stephanie Ittner was employed by Hartman & Hartman, counsel for Appellant, and transcribed a portion of the recorded § 341(a) meeting of creditors.

Ryan's account were "just birthday gifts, could have been graduation money. It's basically Ryan's. It was Ryan's savings account." Based on these facts, Appellant argued that the funds in the Joint Account belonged to Ryan and Mr. Huff held nothing but bare legal title - and then, only by virtue of being the required parental signatory on the account. Finally, Appellant argued that Mr. Huff's testimony at the creditors' meeting demonstrated that Debtors had the subjective intent to hinder and delay their creditors.

On December 20, 2012, the bankruptcy court heard the parties' cross motions for summary judgment and requested further briefing from the parties on issues not relevant to this appeal.

On February 7, 2013, the bankruptcy court held a second hearing on the parties' cross motions for summary judgment and issued a tentative ruling granting Debtors' MSJ and denying Appellant's cross motion.

The next day, the bankruptcy court issued its ruling. The bankruptcy court determined that this case was somewhere in between the facts of Adeeb and those in Bernard. The court found that unlike Bernard, Debtors did not attempt to lie and conceal the movement of funds and did not squander the funds, but rather moved the funds back into Debtors' Checking Account prior to the entry of the Judgment against Mrs. Huff and their bankruptcy filing. The court further found that Debtors disclosed the annuity by listing it in their Schedules.

The bankruptcy court also noted that the funds were moved in and out of Debtors' Checking Account and the Joint Account,

-6-

an account that Mr. Huff controlled as evidenced by the fact that Mr. Huff was able to move the funds between the two accounts without the assistance or signature of his son. Because Mr. Huff had control and possession of the funds at all times, the court concluded that as a matter of law there was no "transfer" because the definition of a transfer under § 101(54)(D) requires the "disposing of or parting with property." The bankruptcy court further found that if there was a transfer, Debtors were entitled to the protection of the disclose-and-recover exception defense under Adeeb. Acknowledging that the case was a close one, the court recognized that § 727 should be liberally construed in Debtors' favor and strictly against Appellant. In the end, the bankruptcy court adopted its original decision, granting Debtors' MSJ and denying Appellant's cross MSJ.

On April 11, 2013, the bankruptcy court confirmed Debtors' plan. The confirmed plan contains no provision whereby Debtors agreed that there would be no discharge in their case if Appellant prevailed in the § 727 adversary proceeding. Moreover, the plan is not a liquidating plan as it contemplates that Debtors will continue to rent some of their properties and contribute their disposable income to the plan for a five-year term. The order confirming the plan has become final.

On May 17, 2013, the bankruptcy court entered the order granting Debtors' MSJ and denying Appellant's cross motion in the adversary proceeding. Appellant timely appealed the

bankruptcy court's order.[5]

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

The ultimate issue is this appeal is whether the bankruptcy court erred in granting Debtors' MSJ and denying Appellant's MSJ. Our resolution of this issue turns upon the sub-issue of whether Appellant's § 727 claim against chapter 11 Debtors was barred as a matter of law.

## IV. STANDARD OF REVIEW

We review de novo a bankruptcy court's ruling on cross-motions for summary judgment. Trunk v. City of San Diego, 629 F.3d 1099, 1105 (9th Cir. 2011).

---

[5] The order granting Debtors' MSJ and denying Appellant's cross motion was a final order because it disposed of the sole claim asserted in the adversary complaint. Under Fed. R. Civ. P. 56, generally a separate document embodying a final judgment that is distinct from the order granting a motion for summary judgment should be entered. See Rule 9021. As of June 4, 2013, no separate judgment had been entered on the bankruptcy court's docket. As a result, the clerk sent notice to the parties regarding the separate judgment requirement. On June 12, 2013, Appellant submitted a "judgment" that the bankruptcy court signed, but the judgment was simply a grant of Debtors' MSJ and denial of Appellant's cross motion. Therefore, no separate judgment has been entered and the separate document requirement has been waived. Bankers Trust Co. v. Mallis, 435 U.S. 381, 388 (1978).

## V.   DISCUSSION

**A.   Appellant's § 727 Claim Against Chapter 11 Debtors Was Barred As A Matter of Law**

Through its § 727 claims, Appellant seeks to deny Debtors their entire discharge.  Section 727(a) has no direct application to this bankruptcy case because Debtors filed their case under chapter 11.  Section 727(a) appears in subchapter II of chapter 7 and as such applies "only in a case under such chapter."  § 103(b).  Section 727(a) therefore provides no basis, standing alone, to deny a chapter 11 debtor's discharge.  Torrington Livestock Cattle Co. v. Berg (In re Berg), 423 B.R. 671, 677 (10th Cir. BAP 2010).

However, § 727(a) applies in chapter 11 cases under the limited circumstances described in section 1141(d).  The chapter 11 discharge is triggered by entry of an order confirming the plan (§ 1141(d)(1)) subject to § 1141(d)(5) when the debtor is an individual.[6]  Section 1141(d)(1)(A) declares that the confirmation of a plan discharges a chapter 11 debtor from all debts arising before confirmation.  Section 1141(d)(3) then creates an exception to this broad discharge, stating:

> The confirmation of a plan does not discharge a debtor if—
>
> (A) The plan provides for the liquidation of all or substantially all of the property of the estate;
>
> (B) the debtor does not engage in business after consummation of the plan; and

---

[6] Under § 1141(d)(5)(A), in an individual's case, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan.

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

The three subparts of § 1141(d)(3) are written in the conjunctive, meaning that an individual chapter 11 debtor will only be denied a discharge if, in addition to the existence of grounds for denial of discharge under § 727(a), the confirmed plan is a liquidating one and the debtor does not engage in business after the plan has been consummated. In re Williams, 227 B.R. 589, 593 (D.R.I. 1998); In re Duncan, 2012 WL 5462917, at *3 (Bankr. D. Ariz. 2012) ("If any one of the three subparts cannot be shown, an individual creditor may not proceed solely on the § 1141(d)(3)(C) prong (the § 727 feature of the statute).").

Here, Debtors' confirmed plan is not a liquidating plan. Although Debtors' plan calls for some property to be turned over to secured creditors, Debtors will continue to rent some of their properties and also provide payment to creditors with their disposable income over a five-year term. Therefore, since the first element under § 1141(d)(3)(A) was not met, Appellant's § 727 claim against Debtors was barred as a matter of law. Accordingly, the matter should have been dismissed.

**B. The Bankruptcy Court's Reasons For Granting Debtors' MSJ Were In Error**

Although the bankruptcy court reached the right result, it did so for the wrong reasons. To prevail under § 727(a)(2)(A), a plaintiff must show, by a preponderance of the evidence: (1) a disposition of property, such as transfer or concealment; (2) the property belonged to the debtor; (3) the transfer

-10-

occurred within one year of the bankruptcy filing; and (4) the debtor executed the transfer with the intent to hinder, delay or defraud a creditor. <u>Aubrey v. Thomas (In re Aubrey)</u>, 111 B.R. 268, 273 (9th Cir. BAP 1990); <u>Grogan v. Garner</u>, 498 U.S. 279, 284 (1991); <u>see</u> Rule 4005. Here, we are concerned only with the first element — whether there was a transfer.

Historically, the term "transfer" has been granted a broad interpretation. <u>See</u> <u>Pirie v. Chi. Title & Trust Co.</u>, 182 U.S. 438, 444 (1901) (stating that the term "transfer" should be interpreted in its most comprehensive sense). This definition has endured over time. More recently, in <u>Barnhill v. Johnson</u>, 503 U.S. 393, 397 (1992), the United States Supreme Court stated: "We acknowledge that § 101(54) adopts an expansive definition of transfer. . . ." The Bankruptcy Code itself defines "transfer" in § 101(54)(D) expansively: "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." The broad definition of "transfer" applies in the context of the § 727. <u>See</u> <u>In re Bernard</u>, 96 F.3d at 1282.

In this case, the bankruptcy court quoted the definition of a "transfer" under § 101(54)(D), but emphasized the phrase "disposing of or parting with", and focused on the fact that Mr. Huff had possession and control at all times over the funds after they were deposited in the Joint Account.[7] Even if

---

[7] At no time did the bankruptcy court analyze the "transfer" with respect to Mrs. Huff.

-11-

Appellant's § 727 claim against Debtors was not barred as a matter of law, the bankruptcy court's analysis was misguided and incorrect as a matter of law.

In deciding whether there was a transfer when it comes to withdrawals or deposits into bank accounts, we do not write on a clean slate in construing the phrase "disposing of or parting with." In Bernard, the Ninth Circuit rejected the debtors' argument that their withdrawals from a bank account were not transfers when the funds remained in their possession for two reasons. First, citing Adeeb, the Ninth Circuit reiterated that depletion of assets (or injury to creditors) was not a prerequisite to a denial of discharge under § 727(a)(2)(A). Id. Second, quoting the legislative history of the statutory definition of a transfer, the court emphasized that the definition of transfer was extremely broad, "[a] deposit in a bank account or similar account is a transfer." Id. (emphasis in original) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813).

On this latter point, the Ninth Circuit reasoned that "if depositing money into a bank account is a transfer, then later withdrawing money from that account should be a transfer, too — it ought to be a two-way street." To support its conclusion, the court explained that under California law, "[a]s between the bank and the depositor such money becomes property of the bank and the bank becomes the debtor of the depositor for the amount deposited." Id. Based upon this relationship between the depositor and bank, the court found that "[i]nstead of owning money sitting in their accounts, the Bernards owned claims

-12-

against their bank. When they withdrew from their accounts, they exchanged debt for money. Thus, when the Bernards made their withdrawals they parted with property, satisfying the Code's definition of transfer." Id. at 1282-83. In the end, the Ninth Circuit determined that the debtors' mere act of removing the money from their bank account to hinder their creditors warranted denial of their discharge.

In light of the Bankruptcy Code's expansive definition of "transfer," which literally encompasses "every" mode of parting with an interest in property, and the express holding in Bernard, Mr. Huff's withdrawal of the $40,000 from Debtors' Checking Account was a "parting with" property, as was Mr. Huff's deposit of the funds into the Joint Account. Under the holding in Bernard, there is no ambiguity around the definition of a transfer; withdrawals and deposits into bank accounts clearly qualify.

Further, the rationale behind the Ninth Circuit's holding in Bernard is supportable under Nevada law. Like California, under Nevada law:

> The relation between a bank and its depositors is that of debtor and creditor. There can be no doubt of this proposition. Money deposited in a bank becomes part of its general assets, and the bank simply becomes a debtor of the depositor. The absolute title to the money by the mere act of deposit passes to the bank.

McStay Supply Co. v. John S. Cook & Co., 132 P. 545, 548 (Nev. 1912).[8] Therefore, by withdrawing the $40,000 from Debtors'

---

[8] This position is the majority position in the United States. See, e.g., N.Y. Cnty. Nat'l Bank v. Massey, 192 U.S.
(continued...)

-13-

Checking Account, Debtors exchanged debt for money and then by depositing the money into the Joint Account, exchanged money for debt. These transactions resulted in a "parting with" property under the holding in <u>Bernard</u> as a matter of law. Finally, as stated in <u>Bernard</u>, the fact that the funds remained in the possession, custody or control of Mr. Huff does not change the result because depletion of assets is not a prerequisite to denial of a bankruptcy discharge under the holding in <u>Adeeb</u>. In sum, the bankruptcy court erred in concluding that no transfer occurred.

Likewise, the bankruptcy court erred in deciding that the disclose-and-recover defense set forth in <u>Adeeb</u> applied under these facts. In <u>Adeeb</u>, the Ninth Circuit interpreted the term "transferred" under § 727(a)(2)(A) to mean "transferred and remained transferred." 787 F.2d at 1344. The court found that its interpretation of the word "transferred" in § 727(a)(2)(A) was "most consistent" with the statute's legislative purpose. The court noted that § 727(a)(2)(A)'s language demonstrated that "Congress intended to deny discharge to debtors who take actions designed to keep their assets from their creditors either by hiding the assets until after they obtain their discharge in bankruptcy or by destroying them." <u>Id.</u> at 1345. Based on this observation, the Ninth Circuit concluded that "[t]he only type

[8](...continued)
138, 147-49 (1904); <u>United States v. Banco Cafetero Panama</u>, 797 F.2d 1154, 1158 (2d Cir. 1986). <u>See also</u> <u>Restatement (Second) of Trusts</u> § 12, cmt. l (1959) ("A general deposit of money in a commercial bank does not create a trust, but a relation of debtor and creditor. . . .").

of transfer that has the effect of keeping assets from creditors is a transfer in which the property remains transferred at the time the bankruptcy petition is filed." Id.

Next, the court found its interpretation supported by the purposes of the Bankruptcy Code: the equitable distribution of the estate among creditors and giving the honest debtor a fresh start. Id. By reading "transferred" in § 727(a)(2)(A) to mean "transferred and remained transferred," the Ninth Circuit reasoned that honest debtors would be encouraged to recover property they have transferred during the year preceding bankruptcy which, in turn, facilitates the equitable distribution of assets among creditors. Id. Taking into consideration the debtor's fresh start, the court noted that its interpretation "permits the honest debtor to undo his mistakes and receive his discharge."

However, the Ninth Circuit held that the debtor's discharge may be granted only if "he reveals the transfers to his creditors, [and] recovers substantially all of the property before he files his bankruptcy petition. . . ." Id. Although Adeeb was an involuntary case, the Panel subsequently revisited the disclose-and-recover exception defense in the context of a voluntary case in Beauchamp. There, the Panel held that in cases of voluntary petitions, both "disclosure and recovery" must occur before the filing. In re Beauchamp, 236 B.R. at 733.

There is no evidence in the record showing that Debtors disclosed the transfers at issue to Appellant prior to the petition date. Further, although Mr. Huff transferred the funds back into Debtors' Checking Account prior to the petition date,

-15-

the recovery requirement under <u>Adeeb</u> means recovery for the benefit of creditors. <u>See</u> <u>Pac. W. Bank. v. Johnson (In re Johnson)</u>, 68 B.R. 193, 199-200 (Bankr. D. Or. 1986). Plainly, Debtors did not recover the $40,000 for their creditors' benefit when they invested it in an annuity they later claimed exempt.

Despite the temporal limitations imposed by <u>Adeeb</u> and <u>Beauchamp</u>, and the fact that, unlike <u>Adeeb</u>, Debtors neither recovered for Appellant's benefit nor disclosed to Appellant the transfer of the $40,000 prior to the petition date, the bankruptcy court concluded that <u>Adeeb</u> should apply as a matter of law. The bankruptcy court's decision to expand the express temporal limitation set forth in <u>Adeeb</u> was in error. We reemphasize that the disclose-and-recover exception defense is a narrow one: disclosure and recovery must occur prior to the petition date and recovery must be for the benefit of creditors. Only then can the "honest debtor" receive his or her discharge.

Therefore, the bankruptcy court erred in two material ways in granting Debtors' MSJ: (1) it found there was no transfer as a matter of law and (2) if there was a transfer, it found the "disclose-and-recover" exception of <u>Adeeb</u> applied, and it does not. Accordingly, we vacate the judgment based on the bankruptcy court's erroneous application of the law.

## VI. CONCLUSION

For the reasons stated, we agree with the result — albeit on other grounds — but VACATE the order based on the bankruptcy court's erroneous application of the law and REMAND with instructions to dismiss the adversary complaint.

-16-